# 97 DTA 133

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

BANCO POPULAR DE PUERTO RICO ANTES,
AHORA GRAND PACIFIC REALTY, INC.
Recurrida

v.

JOSE GUILLERMO PLUMEY CRUZ, NORAH SOTO VAHOR Y LA
SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Peticionarios

Núm. KLCE-96-01048

San Juan, Puerto Rico, a 15 de abril de 1997

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano,
los Jueces Giménez Muñoz y Miranda De Hostos

Alfonso de Cumpiano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se nos plantea la controversia de si el debido proceso de ley requiere notificación adecuada al dueño de una propiedad embargada para el pago de una sentencia en cobro de dinero, previo a su venta en pública subasta, cuando el dueño compareció al pleito.

Decidimos que el debido proceso de ley así lo requiere y que en las circunstancias de este caso debió anularse la venta en pública subasta por no haber mediado una notificación adecuada al deudor propietario.

### I

Los hechos que enmarcan la controversia son los siguientes. El Banco Popular de Puerto Rico (el Banco) demandó en cobro de dinero a los aquí peticionarios, por concepto de un préstamo personal. Los peticionarios contestaron la demanda y previa solicitud del Banco a esos efectos, el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de San Juan, dictó sentencia sumaria contra el señor Plumey y otros por la suma principal de $6,084.00 más intereses y $2,028.00 en concepto de honorarios de abogado. Esta le fue notificada al entonces representante legal de los peticionarios.

El Banco inició el procedimiento de ejecución de sentencia obteniendo orden de embargo sobre el bien inmueble que constituia la residencia principal de los peticionarios. Dicho embargo fue anotado en el Registro de la Propiedad.

No consta en el expediente notificación a los peticionarios de la orden de embargo de 16 de marzo de 1995, ni del mandamiento de embargo de 25 de abril de 1995. En su alegato, la recurrida nos informa que el embargo se notificó al representante legal de los peticionarios, mediante carta de 10 de enero de 1996. ■

Luego del embargo, el Banco cedió sus derechos sobre dicha sentencia a la aquí recurrida, Grand Pacific Realty, Inc. (Grand Pacific). Después de aprobada la sustitución de parte por el tribunal, los peticionarios no fueron notificados de las posteriores mociones presentadas por Grand Pacific, ni de las determinaciones tomadas por el tribunal recurrido respecto a ellas.

Posteriormente, Grand Pacific presentó moción solicitando la venta judicial de la residencia embargada, lo que tampoco fue notificado a los peticionarios. El tribunal requirió de Grand Pacific que le informara si se había hecho investigación respecto a otros bienes muebles de los deudores, susceptibles de embargo. La recurrida presentó declaración jurada en la negativa. No consta notificación a los peticionarios de estos escritos.

Aprobada por el tribunal recurrido la venta judicial, se suscribió por el alguacil el aviso de subasta. En la declaración jurada sometida por Grand Pacific al alguacil, hizo constar que el aviso fue publicado en seis (6) sitios públicos del municipio donde se celebraría la subasta y donde reside la parte demandada.

La buena pro de la subasta se le adjudicó al único licitador, Grand Pacific, por el tipo mínimo, que lo constituia su crédito litigioso montante a la suma de $9,928.84, incluyendo intereses. Conviene señalar que el aviso de pública subasta especificaba que a Grand Pacific le era permitido licitar en la subasta con la cantidad obtenida mediante la sentencia dictada a su favor, del pleito en cobro de dinero, en sustitución de efectivo o cheque certificado.

Al enterarse de que se había celebrado la subasta pública para la venta de su residencia, los peticionarios solicitaron del tribunal se declarara ésta nula y se paralizara el proceso de ejecución de la sentencia. Cuestionaron que se hubiese efectuado el aviso conforme lo dispuesto en la Regla 51.8 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, y la jurisprudencia interpretativa de ésta, reclamaron no haber sido notificados adecuadamente, refutaron lo expuesto por Grand Pacific al tribunal respecto a la carencia de otros bienes susceptibles de embargo. Informaron, además, tener a la disposición de Grand Pacific el monto de la sentencia, intereses y honorarios de abogados. El tribunal *a quo*, mediante la resolución recurrida, despachó dichos planteamientos con un escueto no ha lugar.

Contra ese dictamen los peticionarios interpusieron el presente *certiorari*. Alegan, en síntesis, que la falta de una notificación a ellos, dueños-demandados, del proceso de subasta, la falta de cumplimiento con los requisitos de publicación dispuestos en la Regla 51.8(a) de Procedimiento Civil, y la adjudicación de la subasta sin que se aportara efectivo o cheque certificado, ■ vician de nulidad la venta en pública subasta de su residencia.

Ante la importancia de los planteamientos, expedimos el recurso, quedando paralizados los procedimientos posteriores a la venta judicial. Considerados los planteamientos de las partes, los documentos sometidos y el derecho aplicable, procede dejar sin efecto la resolución recurrida, y decretar la nulidad de la venta judicial, por los fundamentos más adelante expuestos.

## II

Consideremos en primer término lo dispuesto por nuestro ordenamiento procesal civil, respecto a la publicación del aviso de subasta, consignado en la Regla 51.8 inciso (a), en los siguientes términos:

*"(a) Aviso de venta. Antes de verificarse la venta de los bienes objeto de la ejecución, deberá publicarse la misma por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía. Se publicará, además, dicho aviso en la colecturía y en la escuela pública del lugar de la residencia del demandado, cuando ésta fuera conocida, o en un diario de circulación general en el Estado Libre Asociado de Puerto Rico, por espacio de dos (2) semanas y por lo menos una vez por semana... Será nula toda venta judicial que se realice sin dar cumplimiento al aviso de venta en la forma indicada...".*

Surge de la citada regla que el aviso deberá publicarse en tres lugares públicos del municipio en que habrá de llevarse la venta judicial. El propósito de este primer requisito es lograr que el mayor número de compradores potenciales acuda a la venta judicial, lo que fomenta la competencia en precio

y evita la venta de una propiedad, en perjuicio del dueño, por un precio irrazonable. Ahora bien, la referida regla contiene un segundo requisito de publicación que obliga la colocación del aviso de subasta en la colecturía y en la escuela pública del lugar de residencia del demandado, cuando dicho lugar sea conocido, o de no ser conocido, exige la publicación del aviso en un diario de circulación general. A diferencia de lo señalado para el primer requisito, el propósito de este segundo es darle notificación al dueño-demandado de la celebración de la venta judicial. Véase a esos efectos lo resuelto en *C.R.U.V. v. Registrador,* 117 D.P.R. 662, 665-66 (1986), y la presencia y participación del deudor en el proceso de venta judicial, contempladas en la Regla 51.8 (b). ■

Está resuelto que la publicación de los avisos de venta con anterioridad a la celebración de la subasta en venta judicial, es un requisito fundamental íntimamente ligado al debido proceso de ley. *Lincoln Savings Bank v. Figueroa Ramírez,* 124 D.P.R. 388, 391 (1989). Es por ello que la consecuencia de no publicar el aviso de venta en la forma indicada en la ley es clara y conlleva taxativamente, la nulidad de la venta judicial. *Atanacia Corp. v. Saldaña,* 134 D.P.R. ___ (1993), **93 J.T.S. 67,** a la pág. 10679.

Cabe aquí destacar que cuando se trata de venta judicial, no existe una presunción a favor de que todo se ha efectuado en forma adecuada por el alguacil. *C.R.U.V. v. Registrador, supra,* a la pág. 669.

Consideremos los anteriores principios a la luz de los hechos de este caso. Los peticionarios plantearon ante el tribunal recurrido, en su moción de nulidad de la subasta, que los avisos no fueron colocados en las escuelas a que aludió la recurrida, lo que fundamentaron en declaraciones juradas de los directores de las escuelas. Señalaron, además, que no eran dichas escuelas las más cercanas a su residencia. También, que conociendo la recurrida-demandante la dirección de los peticionarios, no les notificó de la subasta para la venta judicial, y que se enteraron de la venta de su residencia casi un mes después de celebrada la subasta.

A pesar del requerimiento estricto de las publicaciones de conformidad con la ley, de la consecuencia de nulidad de su incumplimiento, de que no surge escrito de la recurrida ante el tribunal de instancia en oposición a lo planteado por los peticionarios para impugnar las publicaciones, ■ y de que no se presume la corrección de lo actuado en estos procesos de venta judicial, el tribunal recurrido decretó, sin más trámite, no ha lugar a la moción de nulidad. En la misma fecha, 15 de octubre de 1996, ordenó el desalojo de la propiedad subastada y expidió el mandamiento al alguacil.

Entendemos que el tribunal erró al no celebrar una vista para aquilatar la situación planteada y fundamentada por los peticionarios y dictaminar si se había dado cumplimiento al debido proceso de ley mediante el proceso de notificación dispuesto en la Regla 51.8(a). La validez de la venta judicial dependía de esta evaluación. ■

Aparte de ello, resolvemos que procedía la notificación a los peticionarios sobre el aviso de subasta, toda vez que habían comparecido al pleito, y de que no hay constancia de notificaciones posteriores a la sentencia y a la comunicación sobre el embargo. El caso presenta circunstancias que nos mueven a determinar que la notificación efectuada no fue una adecuada y que procedía notificación a los deudores conforme lo explicado a continuación.

### III
Es cierto que, como señala la recurrida, nuestro ordenamiento procesal civil no exige notificación a la parte contra quien se ejecuta la sentencia, durante el trámite de ejecución. Existe jurisprudencia discutida en los alegatos de las partes, anteriores a las reglas vigentes, donde nuestro Tribunal Supremo expresó que no existía disposición alguna que exigiera la notificación al dueño de la propiedad durante el trámite de ejecución, si ésta se lleva a cabo dentro de los cinco años de la sentencia ser firme. ■ Véanse *Figueroa v. Banco de San Juan,* 108 D.P.R. 680, 690 (1979); *Albaladejo v. Vilella Suau,* 106 D.P.R. 331, 337 (1977); *Avilés Vega v. Torres,* 97 D.P.R. 144, 147-49 (1969).

Mas como antes dicho, aunque la Regla 51.8 (a) no requiere expresamente la notificación al demandado, según jurisprudencia posterior, dicha regla contempla notificación a éste, por medio de edictos o avisos en lugares de su residencia. *C.R.U.V. v. Registrador, supra,* a la pág. 665.

Ahora bien, corresponde analicemos si es suficiente la notificación al demandado contra quien se ejecuta un bien inmueble, como lo dispone la Regla 51.8, cuando ha comparecido al pleito, ante el énfasis que se ha dado por la jurisprudencia a la importancia de la notificación dentro del marco del debido proceso en toda etapa crítica del proceso judicial. La controversia en torno a si esa notificación es suficiente o si debe requerirse expresamente notificación directa bajo ciertas circunstancias en la etapa postsentencia, no ha sido objeto de consideración por nuestro Tribunal Supremo.

El marco constitucional del análisis queda contenido en la sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, y las Enmiendas V y XIV de la Constitución de Estados Unidos, que garantizan que ninguna persona será privada de su libertad o su propiedad sin un debido proceso de ley. En cuanto atañe a la controversia ante nos, bajo la dimensión procesal de dicha protección constitucional, el Estado viene obligado a garantizar que su interferencia con los intereses de propiedad de las personas se lleve a cabo a través de un proceso que sea justo y equitativo. Esto es, una vez se determina que existe un interés propietario el examen requiere determinar qué procedimiento es el adecuado o exigido para cumplir con un debido proceso al interferir con dichos intereses protegidos.

Se ha reconocido que el debido proceso, a diferencia de otros preceptos legales, no es un concepto técnico, de contenido fijo que no esté relacionado al tiempo, lugar y las circunstancias, sino que es flexible y requiere aquellas protecciones procesales que las situaciones particulares requieran. Esto es, dependiendo de las circunstancias que medien en los asuntos objeto de evaluación, podría requerirse diferentes procedimientos, *"pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial." Rivera Rodríguez & Co. v. Lee Stowell,* 135 D.P.R. ___ (1993), **93 J.T.S. 111,** a la pág. 10931; *Román v. Trib. Examinador de Médicos,* 116 D.P.R. 71, 81 (1985); *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976) (citando a *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 1961; y a *Morrissey v. Brewer,* 408 U.S. 471, 481, 1972).

Los criterios que se han desarrollado jurisprudencialmente para determinar cuál proceso es el debido al interferir con algún derecho protegido son: determinar cuáles son los intereses individuales afectados por la acción oficial; el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas; y el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. *Nogueras Cartagena v. Rexach Benítez,* 141 D.P.R. ___ (1996), **96 J.T.S. 112,** a la pág. 86, nota 19 (J. Negrón García, concurrente y disidente); *Rivera Rodríguez & Co. v. Lee Stowell, supra,* a la pág. 10931; *Vélez Ramírez v. Romero Barceló,* 112 D.P.R. 716, 730-31 (1982).

El caso de *Rivera Rodríguez & Co. v. Lee Stowell, supra,* se da en el ámbito de embargos pre-sentencia, situación distinguible de la que consideramos. Sin embargo, el análisis efectuado por el Tribunal Supremo del derecho a notificación en esa etapa bajo el debido proceso de ley, nos sirve de guía en cuanto a las corrientes expansivas de ese derecho. En dicho caso se ordenó, sin notificación y sin vista previa, el embargo pre-sentencia de varias propiedades del demandado en aseguramiento de sentencia. A la luz de lo resuelto por el Tribunal Supremo Federal en *Connecticut v. Doehr,* 501 U.S. 1 (1991), nuestro Tribunal Supremo determinó que la Regla 56.4 de Procedimiento Civil era inconstitucional en cuanto que permitía la expedición de una orden de embargo, sin notificación y sin la celebración de una vista previa, en situaciones que el reclamante no ha alegado o demostrado tener un previo interés propietario sobre la cosa embargada, no ha alegado o demostrado la existencia de circunstancias extraordinarias, ni ha alegado o demostrado la probabilidad de prevalecer mediante prueba documental fehaciente de la cual se desprenda que la deuda es una líquida, vencida y exigible.

El tribunal basó su determinación en un análisis bajo el debido proceso de ley en su dimensión procesal. Concluyó que la expedición de una orden de embargo, sin notificación ni vista previa, aumenta los riesgos de hacer una determinación errónea que injustamente prive al dueño de su interés propietario sobre el bien; ello en vista de que el examen por el tribunal de las alegaciones comprendidas en una moción o demanda resulta insuficiente, pues difícilmente el juez puede efectuar una apreciación realista sobre las posibilidades del promovente de prevalecer. Además, expresó que el interés del Estado es mínimo al reducirse a ayudar a que el reclamante pueda asegurar la ejecución de una futura sentencia que pudiera dictarse a su favor.

Aunque como antes señalado, en nuestro caso ha recaído sentencia y se está en etapa de ejecución, una indebida notificación puede causar también injusticias, sobre todo en la privación innecesaria o improcedente de un interés propietario.

En la jurisdicción federal ha mediado consideración y discusión sobre el requisito de notificación en el ámbito de los remedios postsentencia.

En lo concerniente a la ausencia de notificación a un deudor por sentencia de un procedimiento de ejecución, el caso fundamental fue por mucho tiempo *Endicott Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285 (1924), en el cual el Tribunal Supremo de los Estados Unidos determinó que la Constitución no requería que a un deudor por sentencia se le concediera notificación y vista antes que se emitiera la orden de ejecución en contra de su propiedad. Expresó el Tribunal que ante la ausencia de un requerimiento estatutario no era esencial la notificación, puesto que después de la sentencia, el deudor estaba notificado de lo que seguiría y por tanto no era necesaria ninguna otra notificación para adelantar la justicia.

Sin embargo, el desarrollo del debido proceso de ley respecto a los remedios pre-sentencia también ha conducido a un escrutinio más riguroso de los remedios post-sentencia; esto debido a la analogía parcial entre ambos procesos. ■

La regla de Endicott-Johnson, *supra*, a los efectos de que no es necesaria la notificación y vista antes de un embargo de salarios, bajo el argumento que la sentencia es suficiente notificación de lo que sigue a continuación, ha sido objeto de cuestionamientos y ataques durante las últimas décadas.

Argumentos válidos señalan que el debido proceso de ley requiere que el acreedor establezca la validez de su derecho a la propiedad antes de su ejecución en la etapa post-sentencia y de que se prive de ésta al deudor. Aunque la sentencia establece el derecho del acreedor a la reclamación y constituye suficiente prueba para la ejecución, no establece el derecho del acreedor a una propiedad específica del deudor. Las defensas que pueda tener el deudor en esta etapa, ameritan que se le provea oportunidad para levantarlas, mediante adecuada notificación. Para una discusión más amplia sobre el tema, véase R. Alderman, Default Judgments and Postjudgments Remedies Meet the Constitution: Effectuating Sniadach and its Progeny, 65 GEO. L.J. 1 (1976); Comment, Postjudgment Garnishment in Georgia: Acting Largely in the Dark, 12 G.A. L. REV. 60 (1977).

Respecto a si la colocación de avisos es un medio adecuado de notificación, existe jurisprudencia federal que lo cuestiona.

En *Mennonnite Board of Missions v. Adams,* 462 U.S. 791 (1983), el Tribunal Supremo de los Estados Unidos se enfrentó a una ley del estado de Indiana que permitía la venta de propiedad inmueble cuando los pagos de contribución sobre la propiedad estuvieran en atraso por quince (15) meses o más. Dicha ley obligaba a que se colocaran avisos de venta en el tribunal y la publicación del aviso una vez por semana por tres semanas consecutivas. Además, disponía para la notificación al dueño de la propiedad por correo certificado. La ley nada disponía con respecto a la notificación personal o por correo de los acreedores hipotecarios. Utilizando el balance de intereses de *Mathews v. Eldridge, supra*, el tribunal determinó que el acreedor hipotecario poseía un interés propietario legalmente protegido, y que tenía derecho a una notificación razonablemente calculada de la venta pendiente. ■

Determinó dicho Tribunal que el mecanismo de la colocación y publicación de avisos de venta está diseñado principalmente para atraer compradores potenciales a la venta judicial, y que era poco probable que alcanzara a aquellos con un interés en la propiedad. Concluyó que el uso de estas formas de notificación, catalogadas como menos confiables, no es razonable cuando está disponible un mecanismo eficiente y poco costoso como lo es la notificación por correo. Finalmente, expuso que la posibilidad de que una parte pueda tomar pasos para salvaguardar su interés no releva al Estado de su obligación constitucional. Véase, también, *Tulsa Collection Servs. v. Pope*, 485 U.S. 478 (1988).

En *Luskey v. Steffron,* 336 A.2d 298 (1975) (cert. denegado, 430 U.S. 968, 1977), el Tribunal Supremo de Pennsylvania, en un procedimiento de ejecución de hipoteca, anuló una venta pública por

violación al debido proceso de ley, ante la falta de notificación personal a los dueños demandados. La ley del estado disponía para la notificación de la venta de propiedades inmuebles mediante la colocación de avisos de venta en la oficina del alguacil, de la policía, en la propiedad a ser vendida, y mediante la publicación una vez por semana, durante tres semanas consecutivas, en un periódico de circulación general y en un periódico legal designado para la publicación de notificaciones.

El tribunal concluyó que aunque ese tipo de notificación pudo ser suficiente anteriormente, en la sociedad urbana actual los dueños viven a menudo apartados del área en que está situada la propiedad. Por tanto, confiar en que se visite la propiedad o la oficina del alguacil para examinar posibles notificaciones o que se lea el periódico del distrito, no va a la par con la realidad vigente, por lo que esa notificación es en violación del debido proceso.

En *McCahey v. L.P. Investors,* 774 F.2d 543 (Cir 2do 1985), la arrendataria, señora McCahey, instó demanda contra su arrendador, L.P. Investors, por las pérdidas sufridas al no poder utilizar durante cuatro meses y medio el dinero en su cuenta de cheques debido a un embargo instado por el arrendador con posterioridad a que recayera sentencia a su favor en un pleito por rentas no pagadas. El arrendador, a tenor con las leyes del estado de Nueva York, le envió una notificación a la señora McCahey de que se habían embargado sus fondos en una cuenta de cheques. En la notificación le informó que existía propiedad exenta de embargo y que existía un procedimiento para recuperar la propiedad si ésta era una exenta. La señora McCahey alegaba que el dinero en su cuenta de cheques estaba exento pues era *proveniente exclusivamente de un programa de beneficencia del gobierno.*

La Corte de Apelaciones para el Segundo Circuito, expresó que la expansión de las limitaciones bajo el debido proceso impuestas para los remedios pre-sentencia también han conducido a un escrutinio más riguroso para con los remedios post-sentencia. Mencionó que a pesar de lo resuelto por el Tribunal Supremo Federal en *Endicott-Johnson Corp. v. Encyclopedia Press, Inc., supra,* los remedios post-sentencia han sido repetidamente atacados bajo el debido proceso, especialmente a la luz de que Endicott nunca consideró la existencia de propiedad exenta de ejecución que podría ser embargada por un acreedor si no se le notificaba y se le otorgaba una oportunidad al deudor de ser oído.

Expresó, además, que el razonamiento en Endicott presuponía que la sentencia resuelve todos los asuntos entre el deudor y el acreedor y que el cobro es sólo un acto ministerial. El tribunal, aplicando el análisis de intereses bajo los criterios de *Mathews v. Eldridge, supra,* determinó que era un requisito bajo el debido proceso de ley proveer notificación post embargo. Expresó que dicha notificación debía informar de posibles exenciones y proveer una pronta oportunidad de una vista ante una reclamación de exención. En ese caso, las leyes de Nueva York proveían para ello.

En *Dionne v. Bouley,* 757 F.2d 1344 (Cir 1ro. 1985), la deudora por sentencia impugnó la constitucionalidad de los procedimientos de embargo post-sentencia del estado de Rhode Island por fallar en proveer una pronta notificación de embargo que le informara de la existencia de exenciones estatales y federales, y de los medios disponibles para reclamarlas. También impugnó la falta de una disposición en ley que dispusiera para la celebración de una vista anterior o inmediatamente posterior al embargo en la cual se pudiera reclamar cualquier exención.

La señora Dionne había sido la parte perdidosa en un pleito instado por su arrendador en el que se le condenó a pagar la cantidad de $550.00. Posteriormente el arrendador obtuvo una orden de embargo, como resultado de lo cual el banco congeló su cuenta bancaria. Para el tiempo en que ocurrieron los hechos, la ley permitía, ante un reclamo contra un deudor por sentencia, el embargo de propiedad mueble e inmueble sin vista o notificación al deudor por sentencia. ■

La Corte de Apelaciones para el Primer Circuito, aplicando los criterios esbozados en *Mathews v. Eldridge, supra,* determinó que los procedimientos de la ley de Rhode Island no eran adecuados puesto que fallaban en proveer al deudor por sentencia con una pronta y adecuada notificación que le informe no sólo que su propiedad ha sido embargada, sino también de las exenciones pertinentes y los medios disponibles para reclamarlas. Expresó que los procedimientos vigentes carecían de una disposición expresa para una vista post embargo en la cual se pudiera reclamar cualquier exención. Por último, el tribunal consignó que la sentencia representa sólo la adjudicación de una obligación

monetaria del deudor y no la transferencia al acreedor del título de propiedad de un bien particular.

En *Federal Deposit Ins. Corp. v. Duerksen,* 810 P.2d 1308, 1310-11 (Okla App. 1991), el tribunal determinó que aun cuando la ley aplicable requiera sólo la notificación vía la publicación en un periódico de circulación general, la notificación dada de esta manera a un deudor por sentencia es insuficiente para cumplir con los requisitos constitucionales del debido proceso de ley. El tribunal dictaminó que el deudor por sentencia, cuando se conoce su dirección, tenía que ser personalmente notificado de la venta pública.

En definitiva, el hecho que la notificación de venta mediante la colocación de avisos per se no viole requisitos estatutarios o constitucionales, no la hace razonablemente adecuada en todas las circunstancias y bajo algunas, podría violar ese medio de notificación el debido proceso de ley.

Los razonamientos que hemos examinado en otras jurisdicciones nos ayudan en el análisis de nuestras reglas procesales. La Regla 51.8 de Procedimiento Civil provee para la notificación, aun en situaciones como el presente caso en que la dirección del dueño-demandado es conocida, mediante la colocación de avisos en la colecturía y en la escuela pública del lugar de residencia del demandado. Con respecto a la notificación en la escuela pública conviene tener en cuenta su limitada eficacia dado el hecho que la entrada o permanencia en las escuelas públicas del país por parte de personas ajenas al quehacer educativo se encuentra altamente restringida en virtud de legislación. Véase la Ley Núm. 30 de 16 de mayo de 1972, según enmendada por las Leyes Núm. 135 de 30 de junio de 1977 y Núm. 208 de 9 de septiembre de 1996, 33 L.P.R.A. sec. 2091.

Ante los cambios que también han alterado la forma de vivir en nuestra sociedad, resulta poco razonable y efectiva la notificación de la venta judicial mediante la colocación de un aviso en la escuela pública o en la colecturía del lugar de residencia del demandado. A tales efectos se ha señalado, en torno a la segunda oración de la Regla 51.8 de Procedimiento Civil, y el caso de *C.R.U.V. v. Registrador,* que *"[l]a interpretación prevaleciente parece descansar en la idea de una comunidad pequeña, rural, en donde la colecturía y la escuela sean centros de interacción comunitaria de flujo natural para la población. Pensamos que la mayoría de los puertorriqueños no viven hoy en ese tipo de comunidad".* A. García Padilla, *Análisis del Término de la Jurisprudencia del Tribunal Supremo,* 59 Rev Jur. U.P.R. 375, 394 (1990).

Si el mecanismo reglamentado no es uno efectivo para la notificación al demandado, debemos aplicar el balance de intereses desarrollado jurisprudencialmente a los fines de determinar si en este caso se cumplió con el debido proceso de ley. El interés individual afectado por la acción oficial es el interés propietario, en su residencia principal, de los aquí peticionarios. Sábido es que el derecho de propiedad es pilar de nuestro sistema social y económico, y como tal está altamente protegido por nuestro ordenamiento jurídico. El riesgo de una determinación errónea o la falta de oportunidad al deudor de salvaguardar su interés propietario por falta de notificación adecuada puede propiciar una adjudicación de valor no equitativa o injusta del bien subastado. Ante esa situación el valor probable de garantías adicionales o distintas que permitan al dueño afectado intervenir en el proceso, resulta ser mínimo. Por ello entendemos que la notificación por correo al dueño que ha comparecido al pleito, cuya dirección se conoce, es un mecanismo eficiente y poco costoso para informar a éste que su propiedad será subastada en determinada fecha. ■

Por último, los criterios antes mencionados deberán ser sopesados contra el interés gubernamental protegido. En el presente caso, éste viene a ser el interés del Estado en proveer métodos rápidos y poco costosos para el cobro de sentencias y certeza en el trámite judicial; todo como parte de su interés general de asegurar el cumplimiento de las leyes. Convenimos, según establecido por nuestro Tribunal Supremo en *Rivera Rodríguez & Co. v. Lee Stowell, supra,* a la pág. 10934, que en situaciones de embargo el interés del Estado es mínimo al reducirse a ayudar al reclamante en el cobro de su sentencia.

En este caso, el interés propietario de los peticionarios en su residencia principal resulta sin duda superior al interés del Estado de asegurar el cobro de la sentencia dictada.

Al aquilatar los intereses en la situación que se nos presenta hemos considerado que la sentencia

que dio lugar a la venta judicial fue una en cobro de dinero, por tanto sólo representó la adjudicación de una obligación monetaria, no una transferencia al acreedor del título de un bien particular del deudor. Es decir, la deuda por sentencia dio lugar a una acreencia sobre el patrimonio general de los peticionarios, no específicamente sobre su residencia. Además, el valor monetario probable de la residencia excedía los $9,928.84 del crédito litigioso por el cual se adjudicó. Finalmente, la notificación directa no resultaba onerosa, puesto que se conocía la dirección de los peticionarios.

En definitiva, ante el cuadro de hechos bajo examen, la notificación mediante la colocación de avisos de venta no fue una razonablemente calculada para proveer a los peticionarios una notificación efectiva y adecuada del procedimiento de venta judicial de su residencia.

Nuestra posición es cónsona con lo establecido en el Informe de Reglas de Procedimiento Civil, Propuesta del Comité Asesor Permanente de las Reglas de Procedimiento Civil a la Décimonovena Sesión Plenaria de la Conferencia Judicial de Puerto Rico, de febrero de 1996. Dicho informe incorpora una enmienda a la actual Regla 51.8 de Procedimiento Civil para requerir el requisito de notificación del aviso de venta de los bienes objeto de la ejecución al deudor por sentencia, siempre que hubiere comparecido al pleito. El informe justifica la propuesta enmienda bajo el fundamento de la necesidad de cumplir con una notificación efectiva, que satisfaga a cabalidad los requisitos del debido proceso de ley. ■■■ Esa notificación efectiva se obvió en este caso.

## IV

Por otro lado, el artículo 149 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2473, con respecto a la venta en pública subasta de propiedades inscritas en el Registro de la Propiedad, dispone, en lo pertinente, que *"[e]l titular demandado que haya comparecido a juicio.... deberá ser citado para la subasta por medio de sus abogados."*

El Tribunal Supremo de Puerto Rico ha interpretado de manera abarcadora dicho artículo, en *Caguas Federal v. Martínez,* 112 D.P.R. 851 (1982). En ese caso a un banco tenedor de primera hipoteca se le adjudicó una propiedad mediante subasta sin que se citara personalmente al tenedor de una segunda hipoteca que garantizaba un pagaré hipotecario al portador, y cuya identidad era conocida por el banco reclamante. El Tribunal Supremo determinó que a pesar de que las disposiciones del artículo 149 de la Ley Hipotecaria no amparan al tenedor de un pagaré al portador, dicho artículo no es excluyente de los requisitos de las Reglas de Procedimiento Civil, sino que está supeditado a éstas. Por tanto, determinó que la Ley Hipotecaria no eximía de efectuar la notificación personal requerida bajo las Reglas.

Más aún, el Tribunal expresó que aunque se entendiera que no había obligación de notificación al tenedor de la segunda hipoteca, el principio de la buena fe y la doctrina del abuso del derecho impedían que el reclamante se adjudicara la propiedad, en las circunstancias del caso, en perjuicio de la legítima acreencia del tenedor de la segunda hipoteca.

Esa interpretación, más allá de la letra del artículo 149, demuestra el reconocimiento de que al procedimiento de venta en pública subasta de bienes inmuebles le ampara la protección diseñada en ley, que provee ciertas garantías y salvaguardas para los derechos reales inscritos. Una de esas salvaguardas es la notificación.

A diferencia de la Regla 51.8 de Procedimiento Civil, el artículo 149 de la Ley Hipotecaria provee para una notificación al dueño-demandado que haya comparecido a juicio. Se trata de dos disposiciones procesales complementarias, que atienden en esencia la misma materia, una dirigida a acciones de orden personal y otra a acciones sobre la propiedad.

El artículo 18 del Código Civil, 31 L.P.R.A. sec. 18, establece el principio de *in pari materia,* mediante el cual las leyes que se refieren a la misma materia o cuyo objetivo es el mismo deben interpretarse refiriéndose las unas a las otras, para cuando lo que sea claro en alguno de los preceptos pueda ser tomado para explicar lo que resulte dudoso en otro. Respecto a ese principio, en el caso de *Morales v. Adm. de Sistemas de Retiro,* 123 D.P.R. 589, 595-596 (1989), nuestro Tribunal Supremo, citando a *Rocafort v. Alvarez,* 112 D.P.R. 563, 572 (1982), expresó *"la ley se debe ver como un producto de las condiciones sociales y la necesidad de relacionar la norma con aquellas otras que*

*integran una institución jurídica, y cada institución con las demás, hasta llegar a los principios fundamentales del sistema jurídico total".* ■

La recurrida, Grand Pacific, rechaza la interrelación de los preceptos en cuestión. Alega que las disposiciones del artículo 149 de la Ley Hipotecaria, no son de aplicación a los procesos de ejecución de sentencia donde se ha realizado una anotación de embargo; esto por tratarse de una acción civil personal en cobro de dinero. Fundamenta su posición en el caso de *Pérez Mercado v. Martínez Rondón,* 130 D.P.R. ___ (1992), **92 J.T.S. 32,** pág. 9330.

No es correcto su análisis del caso. En dicho caso el Tribunal Supremo discute las diferencias existentes entre dos remedios provisionales de aseguramiento de sentencia de nuestras Reglas de Procedimiento Civil, la anotación preventiva de demanda y la anotación de embargo. El Tribunal expresó que, contrario a la anotación de demanda, la anotación preventiva de embargo no tiene que afectar o tratar sobre el título de un derecho inscrito. Aclaró que los efectos jurídicos de ambas anotaciones son completamente distintos e interpretó su alcance en cuanto a los títulos anteriores o posteriores de la anotación de que se trate. Es en ese contexto que el Tribunal expresó que el primer inciso del artículo 149 de la Ley Hipotecaria, que dispone que los que registren sus derechos con posterioridad a la anotación se entenderán notificados del pleito y que han consentido a la cancelación de sus asientos, es exclusivamente aplicable al mecanismo de anotación de demanda. Por tanto, la expresión aludida de diferencias entre los mecanismos, se circunscribe a esa parte de la disposición; asunto sobre el cual trataba el caso. En nada aborda el referido caso lo concerniente al tercer párrafo del artículo 149, que requiere que el titular demandado que haya comparecido a juicio sea citado para la subasta por medio de su abogado, que es el pertinente a la controversia ante nos.

Convenimos que, aplicando el principio *in pari materia,* procede armonizar las disposiciones de la Regla 51.8 con las del artículo 149 de la Ley Hipotecaria, en tanto en cuanto están dirigidas a la misma protección mediante notificación de la venta de los bienes del deudor. Por tanto, es nuestro criterio que los principios fundamentales del debido proceso se cumplen con la notificación de la venta judicial dada al dueño-demandado que haya comparecido a juicio conforme se provee en el artículo 149 de la Ley Hipotecaria. Como hemos expresado, el deudor propietario debidamente notificado puede levantar aquellas defensas que tenga sobre la propiedad a ejecutarse, sin que ello represente un menoscabo del derecho del acreedor por sentencia de satisfacer su crédito.

## V

En conclusión, por los principios que hemos discutido, la omisión de una notificación adecuada a los peticionarios en este caso constituyó un error fundamental que propició el que fuera privado de su propiedad sin el debido proceso de ley. Tal defecto sustancial, niega validez jurídica al acto de la subasta y a la adjudicación llevada a cabo. ■

En virtud de todo lo anterior, se deja sin efecto la resolución recurrida, se decreta la nulidad de la venta judicial y se devuelve el caso al tribunal de primera instancia a los fines de que se celebre una nueva subasta pública, conforme los requisitos de ley, incluyendo la previa notificación adecuada a los peticionarios, la que podrá efectuarse conforme la notificación dispuesta por el artículo 149 de la Ley Hipotecaria.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 133

**1.** Observamos que dicha carta no contiene el número del caso, Civil Núm. 96177, ni identifica en el epígrafe las partes correspondientes. Anejo CH, alegato de la recurrida, pág. 10.

**2.** Consideramos inmeritorio este planteamiento, por cuanto el aviso de subasta permitía al acreedor licitar con todo o parte de la cantidad de dinero de la sentencia a su favor. El aviso suscrito por el alguacil, se entiende tiene la aprobación del tribunal. Obsérvese que la Regla 51.8(d) autoriza al tribunal a aceptar otras formas de pago, en casos extraordinarios, como

lo sería el caso de un acreedor ejecutante. Véase, además, el art. 222 de la Ley Hipotecaria, 30 L.P.R.A. 2722, que permite al acreedor hipotecario obtener la buena pro abonando el importe de su crédito.

**3.** En su parte pertinente, ésta dispone: *"si se hallare presente el deudor declarado como tal en la sentencia, podrá determinar el orden para la venta de la propiedad mueble e inmueble cuando se componga de objetos que puedan venderse con ventaja separadamente, o de varias parcelas o lotes, debiendo el alguacil ceñirse a sus instrucciones".*

**4.** No es a esta etapa revisora que procede la oposición. Regla 37 (b) del Reglamento del Tribunal de Circuito de Apelaciones de 1996.

**5.** Un panel de este Tribunal decretó la nulidad de una subasta ante hechos que demostraban que los avisos no habían sido colocados en lugares de la escuela y la alcaldía que dieran acceso a la información cuya diseminación exige la Regla 51.8. Sentencia del Circuito Regional IV de 12 de febrero de 1996 en el caso *Banco Central Corp. v. Roberto Robert Chardón,* Núm. KLCE-96-00001.

**6.** La Regla 51.1 exige, luego del término de cinco años de ser firme la sentencia, autorización del tribunal y notificación a todas las partes, para su ejecución.

**7.** La aplicación de las exigencias del debido proceso de ley a la etapa pre-sentencia se ha hecho efectiva por el Tribunal Supremo de los Estados Unidos, entre otros en *Connecticut v. Doehr, supra*; *North Georgia Finishing Inc. v. D. Chem., Inc.,* 419 US 601, (1975); *Mitchell v. T. Grant Co.,* 416 U.S. 600 (1974), *Fuentes v. Shevin,* 407 U.S. 67 (1972); *Sniadach v. Family Corp.*, 395 U.S. 337 (1969).

**8.** Como principio general, está bien establecido que para cumplir con los requisitos del debido proceso de ley, la notificación tiene que ser de tal naturaleza para razonablemente comunicar la información requerida. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Es decir la notificación requerida por el debido proceso tiene que ser razonablemente calculada para informar a las partes de los procedimientos que podrían afectar directamente su interés legalmente protegido. *Walker v. Hutchinson,* 352 U.S. 112, 115 (1956). En el contexto de la adecuada notificación de un pleito, véanse, *Peguero v. Hernández Pellot,* 139 D.P.R. ___ (1995), **95 J.T.S. 156**, a la pág. 343; *Rodríguez v. Nasrallah,* 118 D.P.R. 93, 101-02 (1986).

**9.** Posteriormente la legislatura de Rhode Island enmendó el estatuto eliminando la referencia a que ninguna notificación del embargo se requería para el deudor por sentencia.

**10.** En *Ponce Federal Bank v. González Oliver, et als,* Núm. KLCE-95-00599, **95 D.T.A. 250**, el Circuito Regional IV de este Tribunal, dictaminó que en un procedimiento de ejecución de sentencia, cuando la parte ha tenido oportunidad de ser notificada del procedimiento y escuchada en los méritos, la garantía del debido proceso de ley no exige una nueva notificación antes de ejecutar su propiedad. No obstante, a diferencia del caso bajo nuestra consideración, en el antes mencionado caso, el Banco envió copia del aviso de pública subasta a los peticionarios mediante correo certificado, a su dirección, lo que entendió este Tribunal era suficiente para cumplir con el debido proceso de ley.

**11.** La Regla 51.8 propuesta elimina la distinción reconocida en *Lincoln Savings Bank v. Figueroa, supra,* para la notificación del aviso de venta judicial a un demandado de residencia conocida y a un demandado de residencia desconocida. Se descarta su notificación en la colecturía y escuela pública cercana a su residencia, por la notificación del aviso de venta judicial mediante edicto publicado en la prensa del país. Informe de Reglas de Procedimiento Civil, *supra,* págs. 228-231.

**12.** En *Rocafort v. Alvarez, supra,* caso en el cual se daba concurrencia de normas procesales contradictorias, entre los artículos 112 y 113 de la Ley Hipotecaria de 1979 (anotación preventiva de demanda) y la Regla 56.7 de Procedimiento Civil (aviso de pleito pendiente), se determinó que en estos casos el intérprete debía tener por no escrita e ineficaz aquella disposición que represente una desviación de los principios generales. Bajo el palio de esta norma el Tribunal Supremo determinó que los referidos artículos de la Ley Hipotecaria liderados por la intervención del juez como evaluador de los méritos de la solicitud de anotación, en contraparte de la acción unilateral del demandante prescrita por la regla de procedimiento, representaban mejor los principios de legalidad y la realidad moderna. El Tribunal declaró ineficaz el primer párrafo de la Regla 56.7, sustituyendo sus disposiciones con aquellas dispuestas en los mencionados artículos de la Ley Hipotecaria, y dejó sin alteración lo dispuesto para la prestación de fianza en el segundo párrafo de la referida regla.

**13.** No debemos pasar por alto que previamente se ha reconocido que otros defectos sustanciales en el edicto o aviso de subasta, entre otros, la falta de notificación a un acreedor posterior, error en la fecha de la subasta, insuficiente publicación,

ligados también al debido proceso de ley, niegan validez jurídica a dicho aviso. *Arroyo v. Ortiz Rivera,* 134 D.P.R. ___ (1993), **93 J.T.S. 53,** a las págs. 10591-92 (J. Negrón García, disidente); *Dapena Quiñones v. Vda. de Del Valle,* 109 D.P.R. 138, 141-42 (1979).